# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BASIC ENERGY SERVICES, INC, *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No. 21-90002 (DRJ)<br><br>(Jointly Administered) |
| DAVID DUNN, as Trustee of the Basic Energy Litigation Trust,<br><br>    Plaintiff,<br><br>    vs.<br><br>NEXTIER HOLDING CO.,<br><br>    Defendant. | Adversary Case No. 23-03062 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO NEXTIER HOLDING CO.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff David Dunn, as Trustee of the Basic Energy Litigation Trust (the "Trust"), the successor-in-interest to certain causes of action of Basic Energy Services, Inc. and its debtor affiliates (collectively, the "Debtors" or the "Company"), respectfully submits this Memorandum of Law in Opposition (the "Opposition") to Defendant NexTier Holding Co.'s ("NexTier" or "Defendant") Motion for Summary Judgment (the "Motion") [Adv. Dkt. No. 8].[1] In support of the Opposition, Plaintiff states as follows:

## PRELIMINARY STATEMENT

1. NexTier – a nondebtor that provided no discernible value to the estates – argues that it is entitled to summary judgment because the Plan's boilerplate release provisions (the "Release") purportedly bar Plaintiff's claims as a matter of law. *See* Motion ¶ 1.[2] According to NexTier, the Plan enjoins each of the Releasing Parties (including the Debtors and creditors that did not opt-out of the Release) from asserting *any and all* claims against NexTier, without limitation. *See* Motion ¶¶ 5-6. NexTier's Motion – which contains one paragraph of legal argument – ignores the Release's plain language, the facts and circumstances surrounding the negotiation of the Release, and basic tenants of bankruptcy law and procedure.

2. The Plan releases claims against the "Released Parties," including the Debtors' "Representatives." *See* Plan, Art. IX(F), Art. I(A) at 9. The term "Representatives" is defined to include the Debtors' "former Affiliates [and] equity holders…in each case, ***in such capacity***." *Id.* (emphasis added). By its plain terms, the Release does not bar Plaintiff's recovery because Plaintiff is not suing NexTier in "its capacity" as a former affiliate or shareholder of Debtor C&J, but, rather, as ***seller*** of the C&J business.

---

[1] Citations to "Adv. Dkt. No. __" refer to documents filed on the docket of this adversary proceeding.

[2] Capitalized terms used but not defined herein shall have the meanings given to those terms in the Complaint [Adv. Dkt. No. 1].

1

3. As an additional and independent reason warranting denial of the Motion, the Plan explicitly carves out from the Release "any claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct or gross negligence." Plan, Art. IX(F). Because Plaintiff's avoidance claims allege that NexTier did not receive value "in good faith," they fall squarely within this carve out.

4. Moreover, the law in this Circuit is clear that third party releases must be specific in language, integral to the plan, and given in exchange for good and valuable consideration. *See infra* ¶¶ 23-26. The purported release here meets none of these criteria. Indeed, NexTier never requested or negotiated a release of claims against it during these Chapter 11 cases. Nor did NexTier provide any consideration in exchange for the purported release. NexTier's claim that the Debtors inadvertently released valuable estate claims for no consideration through the Plan's boilerplate release language is patently frivolous.

## FACTUAL BACKGROUND

I. **The NexTier Avoidance Action.**

5. This action (the "NexTier Avoidance Action") seeks to avoid and recover the fraudulent transfer of millions of dollars of value from the Company to NexTier in connection with the Company's purchase of NexTier's subsidiary, C&J in March 2020 (the "C&J Acquisition").[3]

6. The Company was indisputably insolvent and in desperate need of liquidity when it acquired C&J. *See* Complaint ¶¶ 21-23. NexTier knew that (i) acquiring an oil servicing business like C&J would have, at best, a modest impact on the Company's free cash flow and (ii) C&J's value and ability to generate free cash flow were highly correlated with commodity prices. *See id.* ¶¶ 31-32. Nevertheless, as oil prices plummeted due to the COVID-19 pandemic and the

---

[3] Unless otherwise specified, capitalized terms used but not defined herein have the meaning given to those terms in the Complaint.

Russia-Saudi Arabia price war, NexTier sold C&J to the Company at a massively inflated price. *See id.* ¶¶ 32-39.

7. The Company did not receive reasonably equivalent value for the C&J Acquisition. Following a thorough valuation conducted within three weeks of closing, the Company wrote off close to 50% of C&J's purchase price and determined that, pro forma for the C&J Acquisition, the value of the Company's assets was less than the value of its liabilities. *See id.* ¶¶ 40-43.

8. By selling C&J to an insolvent Company at a massively inflated price, NexTier was enriched at the expense of the Company's creditors. The NexTier Avoidance Action seeks to recover the funds NexTier received in connection with the C&J Acquisition so that those funds may be rightfully distributed to the Company's unsecured creditors.

## II. The Plan Contains Boilerplate Releases That Do Not Mention NexTier Or The NexTier Avoidance Action.

9. The Debtors' *Combined Plan of Liquidation and Disclosure Statement* (the "Plan") [Dkt. No. 1269][4] contains boilerplate language releasing claims against the "Released Parties." *See* Plan, Art. IX(F). The "Released Parties" include the Debtors' "Representatives" (*see id.* Art. I(A) at 9) which, in turn, include "any current and former ***Affiliates, equity holders***, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals of such Person, in each case, ***in such capacity***." *Id.* (emphasis added). "Affiliates" has the meaning set forth in § 101(2) of the Bankruptcy Code (*see id.* at 1), which includes "an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor." 11 U.S.C. § 101(2).

---

[4] Citations to "Dkt. No. __" refer to documents filed in the main bankruptcy case captioned *In re Basic Energy Services, Inc., et al.*, Case No. 21-90002 (DJR) (Bankr. S. D. Tex. 2021).

10. The Plan's release language does not mention NexTier or the NexTier Avoidance Action, nor does any other document filed on the docket in the Debtors' main bankruptcy case mention the release of any claims against NexTier.

### III. The Plan And Confirmation Order Preserved Avoidance Actions Against All Entities Listed On The Debtors' Schedules of Assets And Liabilities, Including NexTier.

11. The Plan explicitly preserved (i) all avoidance actions and (ii) all actions (including avoidance actions) against NexTier. Article II(C)(1)(b) of the Plan provides that:

> In accordance with § 1123(b) of the Bankruptcy Code, but subject to Article IX hereof, ***the Liquidation Trustee shall retain*** and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, ***including any actions specifically enumerated in the Schedule of Retained Causes of Action***.

Plan, Art. II(C)(1)(b) at 19 (emphasis added). The Schedule of Retained Causes of Action [Dkt. No. 1423], in turn, "expressly reserve[d] all Causes of Action" (including Avoidance Actions)[5] against "any Entity identified in the Debtors' respective Schedules [Docket Nos. 291, 292, 293, 294, 295, 296, 297, 299, 300, 301, 302, 303 and 304]." *Id.* at 3 – 4. NexTier is listed on at least two of those Schedules, including in connection with the Purchase Agreement pursuant to which NexTier sold C&J to the Debtors. *See* Dkt. No. 291, Schedule G at 4-5; Dkt. No. 292, Schedule G at 2. The Schedule of Retained Causes of Action warned that "[n]o Entity may rely on the absence of a specific reference in the Plan, herein, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors will not pursue any and all available Causes of Action against it." *Id.* at 1.

12. The *Order Confirming the Debtors' Combined Plan of Liquidation And Approving*

---

[5] "Causes of Action" is defined to include "the Avoidance Actions" as well as "any state or foreign fraudulent transfer law or similar claim." Plan, Art. I(A) at 2. "Avoidance Actions," in turn, includes "any claim, right, or cause of action arising under chapter 5 of the Bankruptcy Code, including claims brought pursuant to sections 541, 542, 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, and any analogous state law claims." *Id.*

4

*on a Final Basis the Disclosure Statement* (the "Confirmation Order") [Dkt. No. 1436] also explicitly preserved all avoidance actions:

> Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with § 1123(b) of the Bankruptcy Code, ***the Liquidation Trust will retain and may enforce*** any Claims, demands, Rights of Action and Causes of Action that the Estate may hold against any Person to the extent not released under the Plan, this Confirmation order, or otherwise, including the D&O Actions and ***the Avoidance Actions***.

Confirmation Order ¶ 26 (emphasis added). The Confirmation Order further provides that:

> The ***non-disclosure or non-discussion of any particular Claim***, demand, Right of Action or Cause of Action is not and ***shall not be construed as a settlement, compromise, waiver, or release of any such Claim***, demand, Right of Action or Cause of Action. ***The Debtors intend to preserve all such Claims***, demands, Rights of Action and Causes of Action.

*Id.* (emphasis added).

## ARGUMENT

13. The "validity of a consensual release is primarily a question of contract law because such releases are 'no different from any other settlement or contract.'" *In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 775 (Bankr. N.D. Tex. 2007); *see also* Motion ¶ 11. In cases "involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous." *In re Technicool Sys., Inc.*, 594 B.R. 663, 668 (Bankr. S.D. Tex. 2018). A contract is "unambiguous when it is reasonably open to just one interpretation given the rules of construction and the surrounding circumstances." *Tech. Consultant Servs., Inc. v. Lakewood Pipe of Texas, Inc.*, 861 F.2d 1357, 1362 (5th Cir. 1988); *see also Fed. Deposit Ins. Corp. v. Connecticut Nat. Bank*, 916 F.2d 997, 1001 (5th Cir. 1990) (same). Applying this standard, the Court should quickly dispense with NexTier's Motion.

I. **The Plan Does Not Bar Plaintiff's Recovery Because Plaintiff Is Not Suing NexTier In Its Capacity As a Former Equity Holder And Affiliate of C&J.**

14. The Plan releases claims against the "Released Parties," including the Debtors' "Representatives." *See* Plan, Art. IX(F), Art. I(A) at 9. "Representatives" is defined to include the Debtors' "former Affiliates [and] equity holders…in each case, *in such capacity*." *Id.* (emphasis added). By its plain terms, the Release does not bar Plaintiff's recovery because Plaintiff is not suing NexTier in "its capacity" as a former affiliate or shareholder of Debtor C&J. Plaintiff seeks recovery against NexTier as *seller* of the C&J business.

15. *In re Smurfit-Stone Container Corp.*, 444 B.R. 111 (Bankr. D. Del. 2011) is instructive. There, the debtors objected to a proof of claim filed by Green Hunt Wedlake Inc. ("Wedlake"), as the Canadian Bankruptcy Trustee of Stone Container Finance Company of Canada II ("Finance II"). *Id.* at 113. Debtor SSCE was the direct parent of Finance II and a guarantor of certain notes issued by Finance II. *Id.* at 114. Wedlake asserted claims against SSCE under (i) SSCE's guarantee of the notes issued by Finance II (the "Guarantee Claim") and (ii) the Nova Scotia Act Respecting Joint Stock Companies, which makes a parent liable for the debts of its subsidiary in the event of a wind up (the "Wind-Up Claim"). *Id.* at 114-15.

16. The court evaluated whether the Guarantee Claim and the Wind-Up Claim were barred by the indenture's "No Recourse Provision," which stated that "no recourse for the payment of the principal of, premium, if any, or interest…shall be had against any…present or future partner, stockholder, other equityholder, officer, director, employee or controlling person, *as such*, of [Finance II], [the debtors]…" *Id.* at 115 (emphasis added). The court explained that the phrase "as such" in the No Recourse Provision "essentially means 'in the listed capacity.'" *Id.* at 119. Accordingly, the court held that the "no recourse provision releases SSCE as a Finance II equity holder from the Wind-Up Claim liability, but does not release the guarantee claim." *Id.* at 123. In

6

so holding, the court explained that "Guarantee Claim is not a claim against SSCE in its role as a Finance II equityholder; therefore, the Guarantee Claim is not affected by the No Recourse Provision." *Id.* at 124.

17. *Fed. Ins. Co. v. Sandusky*, 2013 WL 785269 (M.D. Pa. Mar. 1, 2013) also rejects NexTier's argument. There, the court evaluated whether a D&O insurance policy covered claims for sexual molestation against the company's officer. *Id.* at *1. The policy limited coverage to "Insured Persons" defined "broadly to include any employee, volunteer, director, officer, trustee, committee member, or independent contractor of The Second Mile, while acting in his or her capacity as such." *Id.* The court found the policy "to be unambiguous in limiting coverage to those acts conducted by an Insured Person acting in his or her capacity as such." *Id.* at *5. Accordingly, the court held the claims were "not covered by the insurance policy because the acts alleged therein cannot be said to have been in Defendant Sandusky's capacity as an employee or executive of The Second Mile." *Id.* at *8.

18. The same reasoning applies here. To the extent the Release applies to NexTier at all, it releases NexTier only in its capacity as former equity holder and affiliate of C&J – the Release does not bar the NexTier Avoidance Action, which asserts claims against NexTier in its capacity as seller of the C&J business. NexTier's argument to the contrary ignores the Plan's plain language and reads the phrase "in such capacity" out of the Release. *See Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*, 351 F.3d 642, 651 (5th Cir. 2003) (explaining that courts must "give effect to each contractual term so that none is rendered meaningless.").

19. NexTier's tortured reading of the Plan is also inconsistent with basic rules of contract interpretation. NexTier and the Debtors were on opposite sides of the C&J Acquisition. NexTier's claim that it was released as a "Representative" of the Debtors from any liability in

7

connection with a transaction where NexTier was adverse to the Debtors runs afoul of the "well settled rule" that courts must "construe language according to its plain, ordinary and generally accepted meaning" (*Elmen Holdings, LLC v. Martin Marietta Materials Inc.*, No. 4:19CV3293, 2022 WL 17834926, at *7 (S.D. Tex. Nov. 22, 2022)) and the rule requiring courts to interpret "[c]ontract provisions ... so as to avoid meanings that produce unreasonable, oppressive, or absurd results[.]" *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 114 (5th Cir. 2010).

## II.     The Plan Does Not Bar Claims Alleging Willful Misconduct.

20.     The Plan explicitly carves out from the Release "any claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct or gross negligence." Plan, Art. IX(F). The NexTier Avoidance Action alleges NexTier's willful misconduct and falls squarely within this carve out.

21.     Specifically, the NexTier Avoidance Action seeks to recover the funds NexTier received in connection with the C&J Acquisition pursuant to Section 550 of the Bankruptcy Code. *See* Complaint ¶¶ 63-65. Pursuant to Section 550, Plaintiff is entitled to recover the avoidable transfer only if NexTier did not receive value "in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). The Complaint alleges that NexTier did not receive value "in good faith" because it sold C&J to the Debtors at a massively inflated price despite knowing that (i) the Debtors will insolvent; (ii) acquiring an oil servicing business like C&J would have, at best, a modest impact on the Company's free cash flow; and (iii) C&J's value and ability to generate free cash flow were highly correlated with commodity prices. *See* Complaint ¶¶ 21-23, 31-32.

22.     Accordingly, even if the Release applied to claims against NexTier in its capacity as seller of the C&J business (which it does not), the Plan does not bar Plaintiff's recovery because the Release does not cover claims alleging willful misconduct.

8

**III.    A Debtor Cannot Inadvertently Release Valuable Estate Claims For No Consideration Pursuant to Boilerplate Release Language in its Plan of Reorganization.**

23.     The general rule is that a discharge in bankruptcy has no effect on the liability of third parties, including the debtor's shareholders and affiliates. *See* 11 U.S.C. § 524(e) (providing that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."). While Bankruptcy Rule 9019 authorizes the Court to approve compromises and settlements that contain third party releases, courts will generally approve such releases only if they (i) were given in exchange for good, valuable, and adequate consideration after due notice and opportunity for hearing; (ii) are appropriately tailored under the facts and circumstances of the case; (iii) were integral to the global settlement or resolution of the Chapter 11 case; (iv) confer substantial benefits on the estate(s); (v) are fair, equitable, and reasonable; (vi) were negotiated in good faith and at arm's length; and (vi) are in the best interests of the debtors, the estates, holders of claims and interests, and all other parties in interest. *See In re Fieldwood Energy LLC et al.*, No. 20-33948 (MI), 2021 WL 2853151, at *13 (Bankr. S.D. Tex. June 25, 2021); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (reviewing settlements using similar factors); *In re Derosa-Grund*, 567 B.R. 773, 784 (Bankr. S.D. Tex. 2017) (same); *In re ASARCO LLC*, No. 05-21207, 2009 WL 8176641, at *10 (Bankr. S.D. Tex. June 5, 2009).

24.     Third party releases must also explicitly identify the entity and the claims being released. Boilerplate provisions purporting to release a "shareholder" or "affiliate" of the debtor are insufficient to discharge claims against the debtor's insiders. *See In re Applewood Chair Co*c (5th Cir. 2000) (holding that a party's status as an officer or shareholder of the debtor combined with boilerplate release language is not sufficiently specific to release claims against the third party); *see also Hernandez v. Larry Miller Roofing, Inc.*, 628 F. App'x 281, 287-88 (5th Cir. 2016)

9

(holding that boilerplate release language was not "specific enough" to release claims against debtor's officer where officer was "not identified by name in any of the release language" and plan did not "mention anything related to" specific claim being released); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir. 1987); *FOM Puerto Rico S.E. v. Dr. Barnes Eyecenter Inc.*, 255 F. App'x 909 (5th Cir. 2007).

25. NexTier's purported third party release meets none of these criteria. The only agreement the Debtors negotiated with NexTier during these Chapter 11 cases was the *Joint Stipulation And Agreed Order* (the "NexTier Stipulation") [Dkt. No. 1328], which reflects the terms of a settlement between the parties regarding the amount of NexTier's allowed administrative expense claim. *See* Motion ¶ 9. The NexTier Stipulation – which, by its terms, "constitutes the entire agreement between the Parties in respect of the subject matter hereof" (NexTier Stipulation ¶ 5) – does not mention the release of claims against NexTier. The Debtors and NexTier did not negotiate the release of claims against NexTier in connection with the NexTier Stipulation or at any other point during these Chapter 11 cases. Against this factual and legal backdrop, NexTier's claim that the Plan unambiguously bars Plaintiff's recovery is disingenuous and patently frivolous.

## CONCLUSION

26. For the foregoing reasons, Plaintiffs respectfully request that this Court deny NexTier's Motion.

Dated: July 3, 2023.

                                    Respectfully submitted,

**JACKSON WALKER LLP**

/s/ *Matthew D. Cavenaugh*
Matthew D. Cavenaugh
Veronica A. Polnick
1401 McKinney St., Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Email:  mcavenaugh@jw.com
          vpolnick@jw.com

-and-

**GLENN AGRE BERGMAN & FUENTES LLP**

Andrew K. Glenn (admitted *pro hac vice*)
Kurt A. Mayr (admitted *pro hac vice*)
Agustina G. Berro (admitted *pro hac vice*)
1185 Avenue of the Americas, Fl. 22
New York, New York 10036
Telephone: (212) 970-1600
Email:  aglenn@glennagre.com
          kmayr@glennage.com
          aberro@glennagre.com

*Attorneys for Plaintiff*

**Certificate of Service**

    I certify that on July 3, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh